ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| SISTEMA DE RETIRO DE LA UNIVERSIDAD DE PUERTO RICO POR CONDUCTO DE LA JUNTA DE RETIRO DE LA UNIVERSIDAD DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>LUIS A. FERRAO DELGADO Y OTROS<br><br>Peticionarios | TA2026CE00434 cons. con TA2026CE00439 TA2026CE00440 TA2026CE00442 TA2026CE00446 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV09505<br><br>Sobre: Interferencia Torticera |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de mayo de 2026.

Mediante sendos autos de *certiorari*, comparecen los demandados y peticionarios: Sra. Martha L. Acevedo Peñuela, Sr. Luis Torres Llompart, Sra. Margarita E. Villamil Torres, Sr. Enrique A. Guzmán Matos y Sra. Eneida Rodríguez Rossy. Solicitan la revocación de los dictámenes interlocutorios, por virtud de los cuales el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), denegó las respectivas mociones de desestimación incoadas.

**I.**

La causa de autos se inició el 15 de octubre de 2024, ocasión en que la parte demandante y recurrida, Sistema de Retiro de la Universidad de Puerto Rico (Sistema de Retiro), por conducto de la Junta de Retiro de dicha institución (Junta de Retiro), presentó una *Demanda* contra la Universidad de Puerto Rico (UPR), la presidencia, oficiales y funcionarios en su carácter personal, la Junta de Gobierno, así como contra sus miembros, también en su carácter personal.[2] Entre otras causas de

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Entrada 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

acción, la parte demandante alegó el incumplimiento contractual, interferencia torticera, violaciones legales y fiduciarias, daños, perjuicios y daños punitivos.

En particular, la parte demandante adujo que, en el presupuesto del año fiscal 2023-2024, se asignaron unas partidas específicas para cubrir las aportaciones patronales al Sistema de Retiro, las cuales no fueron satisfechas, debido al incumplimiento contractual, legal, fiduciario y ético de los demandados. Sostuvo, además, que los demandados, a sabiendas, interfirieron, desviaron a otros fines o meramente omitieron el pago de alrededor $38,000,000.00 sin autorización ni justificación alguna. Acotó que los demandados ignoraron temerariamente los esfuerzos para lograr el cumplimiento de realizar las aportaciones patronales. La parte demandante imputó también a los demandados que, como resultado de sus actuaciones y omisiones, las aportaciones patronales se perjudicaron, se tuvieron que liquidar activos para cumplir con las obligaciones corrientes, se causaron pérdidas de oportunidades de inversión y se puso en riesgo la continuidad y solvencia del Sistema de Retiro. Como remedio, solicitó que los demandados respondieran por los daños causados, tanto en su carácter personal como oficial. A esos efectos, en la *Demanda* solicitó el resarcimiento por concepto de los daños y perjuicios estimados en $10,000,000.00, y la imposición de daños punitivos en una cantidad no menor de $1,000,000.00.

Luego de varios trámites, el 3 de octubre de 2025, la Junta de Retiro, en nombre del Sistema de Retiro, solicitó autorización para enmendar la *Demanda*.[3] Aunque no varió su reclamación dineraria, indicó que las enmiendas tenían el fin de incluir el año fiscal 2024-2025, añadir a más partes demandadas de la Junta de Gobierno, precisar las partidas de las aportaciones patronales y la liquidación de activos, así

---

[3] Entrada 168 y Anejo SUMAC-TPI.

como alegar daños continuados, a los fines de permitir una adjudicación justa y completa de las controversias. El TPI solicitó la postura de la parte demandada,[4] quien expresó sus planteamientos opositores.[5] La Junta de Retiro, por su parte, reiteró la petición de la enmienda.[6] El 15 de octubre de 2024, el TPI concedió la autorización.[7]

En cumplimiento de lo ordenado, la Junta de Retiro presentó de manera independiente la *Primera Demanda Enmendada*.[8] Así las cosas, varios demandados y peticionarios instaron por separado sus respectivas mociones desestimatorias.

El 31 de diciembre de 2025, la **Sra. Martha L. Acevedo Peñuela** interpuso, por segunda ocasión,[9] una petición de desestimación, esta vez en torno a la *Primera Demanda Enmendada*.[10] Invocó básicamente los mismos fundamentos que su moción dispositiva previa. A saber, que la reclamación no esbozaba alegaciones particularizadas y suficientes en su contra para imponer responsabilidad personal a una funcionaria pública, acorde con el umbral exigido en el ordenamiento jurídico. Acotó que estaba protegida por la inmunidad condicionada, por virtud de la Ley Núm. 2 de 18 de enero de 2017, *Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico*, 3 LPRA sec. 9361 *et seq.*, (Ley Núm. 2-2017). Manifestó también que las alegaciones de interferencia torticera, daños punitivos y otros resarcimientos reclamados carecían de bases fácticas y legales.

En su oposición, la parte demandante abogó por las normas procesales que gobiernan las alegaciones reclamantes y el examen jurídico procedente en esta etapa temprana del litigio.[11] Rechazó la invocación a la inmunidad condicionada a favor de la señora Acevedo

---

[4] Entrada 169 SUMAC-TPI.
[5] Entradas 175 y 176 SUMAC-TPI.
[6] Entrada 177 SUMAC-TPI.
[7] Entrada 180 SUMAC-TPI.
[8] Entrada 181 SUMAC-TPI.
[9] Refiérase a las entradas 103, 131 y 133 SUMAC-TPI y al caso TA2025CE00515, consolidado con el TA2025CE00596 y resuelto por un panel fraterno mediante *Resolución* el 24 de octubre de 2025.
[10] Entrada 224 SUMAC-TPI.
[11] Entrada 227 SUMAC-TPI.

Peñuela, toda vez que la disposición legal se circunscribe a las actuaciones u omisiones realizadas de buena fe, dentro del marco de su cargo y autoridad legal, cuestiones no alegadas en la *Primera Demanda Enmendada.* Con relación a las imputaciones torticeras, la parte demandante apuntó que éstas pueden ser solidarias cuando el contratante que incumple y el tercero que contribuye al incumplimiento actúan de manera concurrente. Sostuvo que contra la señora Acevedo Peñuela y el resto de los demandados no se imputaba una mera omisión o una discrepancia administrativa, sino un patrón de conducta dolosa consistente en facilitar, consentir o ejecutar decisiones presupuestarias, que desviaron los fondos asignados para cumplir con obligaciones legales y contractuales a favor del Sistema de Retiro.[12]

El 11 de marzo de 2026, el TPI emitió su dictamen, en el cual declaró no ha lugar la moción desestimatoria.[13] Añadió que la señora Acevedo Peñuela trataba de volver a litigar asuntos ya resueltos, que constituían la ley del caso. Enfatizó que las alegaciones de hechos bien formuladas eran suficientes para descartar la desestimación, incluyendo las concernientes a las excepciones a la inmunidad invocada. Inconforme con el resultado, la señora Acevedo Peñuela presentó la *Petición de Certiorari* **TA2026CE00442** el 10 de abril de 2026.[14]

---

[12] Sin contar con una previa autorización ni solicitud expresa del TPI, la señora Acevedo Peñuela presentó una réplica, en contravención a las órdenes de manejo de caso dictadas, en las cuales se pautó que no se presentarían réplicas o dúplicas en respuesta a mociones, a menos que el tribunal así lo solicite o se pida autorización previa, junto a los fundamentos que ameriten el escrito; refiérase a las entradas 32, 146, 245 y 276 SUMAC-TPI.

[13] Entrada 271 SUMAC-TPI.

[14] Señalamientos de error presentados en el **TA2026CE00442**:

PRIMER ERROR: Erró el Tribunal de Primera Instancia al aplicar la doctrina de ley del caso para denegar la Solicitud de Desestimación de la Sra. Acevedo, sin evaluar la suficiencia de las alegaciones contenidas en la Demanda Enmendada, la cual sustituye la Demanda original y, por tanto, constituye la alegación vigente del caso.

SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al concluir que la *Demanda Enmendada* contiene alegaciones de hechos suficientes para subsistir la *Solicitud de Desestimación*, aun cuando dichas alegaciones son generalizadas, conclusorias y carecen de hechos específicos que establezcan, de manera individualizada, la participación de la Sra. Acevedo en la conducta imputada.

TERCER ERROR: Erró el Tribunal de Primera Instancia al no aplicar la doctrina de inmunidad condicionada ni la exoneración estatutaria expresa establecida en el Artículo 11 de la Ley Núm. 2-2017, a pesar de que de la faz de la *Demanda Enmendada* surge que las actuaciones imputadas a la Sra. Acevedo fueron realizadas en el descargo de sus funciones oficiales, y no se alegaron hechos

El 20 de enero de 2026, el **Sr. Luis Torres Llompart** solicitó la desestimación de la acción civil. Arguyó que la reclamación adolecía de alegaciones específicas en su contra. Además, imputó que el Sistema de Retiro y la Junta de Retiro carecían de legitimación activa y personalidad jurídica para vindicar sus derechos.[15]

El 23 de enero de 2026, la **Sra. Margarita E. Villamil Torres** alegó en su petición dispositiva de desestimación la ausencia de hechos en su contra que justificaran la concesión de remedios e invocó la prescripción. Aseveró que estaba cobijada por la figura de inmunidad condicionada dadas sus funciones como representante claustral ante la Junta de Gobierno.[16]

En su oposición conjunta, la parte demandante adujo que sus alegaciones satisfacían los criterios reglamentarios y jurisprudenciales de plausibilidad. Indicó que todos los miembros de la Junta de Gobierno estaban específicamente mencionados como partes de la *Primera Demanda Enmendada* por lo que resultaba innecesario que, por cada alegación, se volvieran a nombrar, cuando todos forman o formaron parte de la misma Junta de Gobierno.

En cuanto a la prescripción, argumentó que la reclamación enmendada alegaba daños continuados. En estas instancias, el término prescriptivo no comienza a cursar hasta que se verifican las últimos acciones u omisiones o se produzca el resultado definitivo, lo que sea posterior. Además, alegó haber advenido en conocimiento de la participación de la señora Villamil Torres durante el descubrimiento y análisis de la información relacionada con la venta de activos del Sistema de Retiro. Negó, a su vez, que los demandados estuvieran cobijados por la inmunidad condicionada, ya que se le imputaban actuaciones ilegales, irrazonables y de mala fe. Apuntó que la Escritura Pública 58 de 29 de

---

específicos que permitan inferir conducta dolosa, maliciosa o constitutiva de negligencia crasa que derrote dicha inmunidad.

[15] Entrada 232 SUMAC-TPI.

[16] Entrada 235 y Anejos SUMAC-TPI.

junio de 2016, *Confirmation and Acknowledgement of Trust* (Fideicomiso), ante el Notario Alberto Luis Toro Suárez,[17] establecía una inmunidad limitada.

Con relación a la falta de legitimación jurídica, la parte demandante planteó que los fondos del Sistema de Retiro son autónomos y separados de los bienes de la UPR. Éstos fueron protegidos por un Fideicomiso, por lo que la Junta de Retiro posee capacidad jurídica, conforme la Ley Núm. 219 de 31 de agosto de 2012, *Ley de Fideicomisos*, 32 LPRA sec. 3351 *et seq*. Añadió que el planteamiento ya ha sido previamente evaluado por los tribunales en las tres jerarquías y decidido a favor del reconocimiento de la legitimación activa.[18]

El TPI acogió los fundamentos de derecho de la parte demandante y rechazó desestimar las causas de acción en contra de la señora Villamil Torres y del señor Torres Llompart, mediante sendos pronunciamientos notificados el 11 de marzo de 2026.[19] Expuso que las alegaciones de hechos bien formuladas tomadas de la forma más favorable a la parte demandante eran suficientes para establecer una causa de acción y subsistir las mociones de desestimación.

Insatisfecha, la señora Villamil Torres instó el 9 de abril de 2026 un *Certiorari Civil* **TA2026CE00434**.[20] Por su parte, al día siguiente, el

---

[17] Véase, el anejo de la entrada 232 SUMAC-TPI.

[18] En alusión al pleito civil SJ2017CV02589; así como al caso KLAN201900304 consolidado con KLCE201900366, resuelto por un panel hermano el 30 de septiembre de 2020. En cuanto a este último, tomamos conocimiento judicial que, mediante la *Resolución* en el caso CC-2020-0588, el Tribunal Supremo declaró no ha lugar el recurso de *certiorari* instado. Véase, entrada 30 y sus anejos SUMAC-TPI.

[19] Entradas 273-274 SUMAC-TPI. El señor Torres Llompart presentó una réplica, por lo que el Sistema de Retiro solicitó permiso para contestarla. En respuesta, el TPI refirió a las partes a sus previos pronunciamientos en torno a la limitación de este de tipo de escritos posteriores; véanse, entradas 253-254 y 270 SUMAC-TPI.

[20] Errores planteados en el **TA2026CE00434**:

PRIMER ERROR: Erró el Tribunal de Primera Instancia al concluir que la doctrina de daños continuados aplica al caso de autos, extendiendo indebidamente el término prescriptivo de las causas de acción.

SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al no reconocer la aplicabilidad de la defensa de inmunidad condicionada, a pesar de que los hechos alegados ocurrieron en el ejercicio de funciones oficiales, en carácter de representante claustral ante la Junta de Gobierno de la Universidad de Puerto Rico.

señor Torres Llompart incoó un *Recurso de Certiorari* **TA2026CE00439**.[21]

De otro lado, el 3 de febrero de 2026, el **Sr. Enrique A. Guzmán Matos**. Expuso que no existían alegaciones fácticas plausibles, específicas e individualizadas en su contra, como la causa por interferencia torticera. Dijo que no se derrotaba la inmunidad condicionada, al amparo de la Ley Núm. 2-2017. Afirmó que la reclamación era jurídicamente insostenible.[22]

El 12 de febrero de 2026, la **Sra. Eneida Rodríguez Rossy** instó una solicitud similar, en la que abogó por la insuficiencia de las alegaciones que ameritaran un remedio, la prescripción de la causa y la protección de la inmunidad condicionada.[23]

La parte demandante se opuso en un solo escrito.[24] En síntesis, reprodujo los argumentos ya planteados, en cuanto a la satisfacción procesal de las alegaciones, al contener una relación sucinta y sencilla de la reclamación sustentada en hechos que demuestren que la parte reclamante tiene derecho a un remedio. Aclaró que la inmunidad conferida en el Artículo 11 de la Ley Núm. 2-2017 excluye la negligencia crasa que conlleve una indiferencia temeraria hacia sus deberes. 3 LPRA sec. 9371. Negó la prescripción de los daños continuados alegados, toda vez que el daño no culminó coetáneamente con los años fiscales, sino que se manifestaron y amplificaron mediante la pérdida progresiva de activos y rendimientos. Añadió que la reclamación exponía

---

[21] Señalamientos de error esbozados en el **TA2026CE00439**:
PRIMER ERROR: Erró el TPI al incurrir en abuso de discreción al resolver de forma conclusoria por referencia automática a la *Oposición* sin adjudicar los planteamientos medulares ni atender argumentos no controvertidos, impidiendo la revisión apelativa efectiva.
SEGUNDO ERROR: Erró el TPI al no desestimar la demanda por falta de personalidad jurídica y legitimación activa de la parte demandante.
TERCER ERROR: Erró el TPI al concluir que la demanda expone una reclamación que justifica la concesión de un remedio, a pesar de la ausencia total de alegaciones fácticas individualizadas contra el apelante, el uso de alegaciones colectivas y la falta de notificación adecuada.
CUARTO ERROR: Erró el Tribunal de Primera Instancia al no desestimar las reclamaciones por estar prescritas y al aceptar indebidamente la teoría de daño continuado.
[22] Entrada 244 SUMAC-TPI.
[23] Entrada 252 SUMAC-TPI.
[24] Entrada 255 SUMAC-TPI.

correctamente la causa por interferencia torticera al alegar de manera plausible, que los demandados conocían la existencia de una relación contractual protegida y que, mediante actos u omisiones conscientes dentro de su ámbito de autoridad, intervinieron "de forma que entorpeció o frustró el cumplimiento de dicha relación, causando daños". A ello se sumó el presunto incumplimiento fiduciario que transgredió el ejercicio legítimo de sus funciones.

El 11 de marzo de 2026, el TPI descartó desestimar la *Primera Demanda Enmendada* en contra del señor Guzmán Matos.[25] El día 24 del mismo mes y año, declaró no ha lugar la petición de la señora Rodríguez Rossy.[26] En ambos dictámenes, adoptó los fundamentos legales del Sistema de Retiro, esbozados a través de la Junta de Retiro.

El 10 de abril de 2026, el señor Guzmán Matos acudió ante nos mediante la *Petición de Certiorari* **TA2026CE00440**.[27] La señora Rodríguez Rossy, del mismo modo, presentó el *Certiorari Civil* **TA2026CE00446** el 12 de abril de 2026.[28]

A petición de parte y conforme nuestra evaluación,[29] por virtud de la *Resolución* de 15 de abril de 2026,[30] consolidamos el quinteto de

---

[25] Entrada 275 SUMAC-TPI.

[26] Entrada 296 SUMAC-TPI.

[27] Errores planteados en el **TA2026CE00440**:
PRIMER ERROR: Erró el Tribunal de Primera Instancia al concluir que la *Demanda Enmendada* contiene alegaciones de hechos suficientes para subsistir la *Solicitud de Desestimación*, aun cuando dichas alegaciones son generalizadas, conclusorias y carecen de hechos específicos que establezcan, de manera individualizada, la participación del Sr. Guzmán en la conducta imputada.
SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al no aplicar la doctrina de inmunidad condicionada ni la exoneración estatutaria expresa establecida en el Artículo 11 de la Ley Núm. 2-2017, a pesar de que de la faz de la *Demanda Enmendada* surge que las actuaciones imputadas al Sr. Guzmán fueron realizadas en el descargo de sus funciones oficiales, y no se alegaron hechos específicos que permitan inferir conducta dolosa, maliciosa o constitutiva de negligencia crasa que derrote dichas protecciones.

[28] Señalamientos de error planteados en el en el **TA2026CE00446**:
PRIMER ERROR: Erró el Tribunal de Primera Instancia al concluir que la doctrina de daños continuados aplica al caso de autos, extendiendo indebidamente el término prescriptivo de las causas de acción.
SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al no reconocer la aplicabilidad de la defensa de inmunidad condicionada, a pesar de que los hechos alegados ocurrieron en el ejercicio de funciones oficiales, en carácter de representante claustral ante la Junta de Gobierno de la Universidad de Puerto Rico.

[29] Véanse, entradas 3-4 de SUMAC-TA2026CE00434.

[30] Entrada 5 SUMAC-TA2026CE00434; Orden Administrativa DJ 2019-316 de 21 de noviembre de 2019, según enmendada por la Orden Administrativa DJ 2019-316A de 28 de julio de 2020, *Consolidación de Recursos en el Tribunal de Apelaciones y Procedimientos Internos en la Consideración de los Recursos.*

recursos discrecionales, de conformidad la Orden Administrativa DJ 2019-316 de 21 de noviembre de 2019, según enmendada por la Orden Administrativa DJ 2019-316A de 28 de julio de 2020, sobre la *Consolidación de Recursos en el Tribunal de Apelaciones y Procedimientos Internos en la Consideración de los Recursos*. En cumplimiento, el 23 de abril de 2026, el Sistema de Retiro, por conducto de la Junta de Retiro, compareció con una *Oposición a expedición de recursos de certiorari*, cuyo exceso de páginas autorizamos. Asimismo, el 4 de mayo de 2026, el señor Torres Llompart solicitó permiso para replicar y unió un escrito, al que dimos por no puesto.[31] La Junta de Retiro, además, instó oposición al día siguiente.[32]

## II.

### A.

El auto de *certiorari* es un vehículo procesal de naturaleza discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). El Tribunal Supremo de Puerto Rico ha definido discreción como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró, supra*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). En cuanto a este foro revisor, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e

---

[31] Entrada 8 SUMAC-TA2026CE00439.
[32] Entrada 9 SUMAC-TA2026CE00439.

indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra*.

En virtud de lo anterior, para ejercer sabia y prudentemente nuestra facultad discrecional, al determinar si expedimos o denegamos un recurso de *certiorari* civil e interlocutorio, nos regimos en primer lugar por un examen objetivo basado en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. En lo pertinente, la norma procesal establece que "[e]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra [...] de la denegatoria de una moción de carácter dispositivo". Apunta la referida regla que, de denegar la expedición del recurso de *certiorari*, "el Tribunal de Apelaciones no tiene que fundamentar su decisión". *Id.*

Luego de sobrepasar el examen objetivo de la Regla 52.1 de Procedimiento Civil, *supra*, se procede a realizar un examen subjetivo en el cual nos guiamos por los *Criterios para la expedición del auto de certiorari* esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025).[33]

**B.**

Nuestro ordenamiento jurídico dispone que la *alegación* debe contener "(1) [u]na relación sucinta y sencilla de los hechos

---

[33] Al determinar la expedición de un auto de *certiorari*, este Tribunal toma en consideración los siguientes criterios:
    (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
    (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
    (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
    (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
    (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
    (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
    (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. […]". Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1. En consonancia, la Regla 6.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.5, establece que "[c]ada aseveración en una alegación será sencilla, concisa y directa. No se exigirán fórmulas técnicas para la redacción de las alegaciones o mociones. Todas las alegaciones se interpretarán con el propósito de hacer justicia. […]".

Al respecto, el Tribunal Supremo ha expresado "que nuestro ordenamiento jurídico no establece requisitos complejos para la redacción de una demanda". *Eagle Security v. Efron Dorado et al.*, 211 DPR 70, 84 (2023). A esos fines, ha reiterado que el propósito de las alegaciones de la demanda es "notificarle a la parte contraria, a grandes rasgos, cuáles son las reclamaciones en su contra de tal forma que pueda comparecer a defenderse si así lo desea". *Saint Mary Investments, LLC v. Denton Morales y otros*, 2026 TSPR 35, 218 DPR __ (2026), que cita con aprobación a *Rivera, Lozada v. Universal*, 214 DPR 1007, 1021 (2024); y además a, *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 395 (2022); *León v. Rest. El Tropical*, 154 DPR 249, 262 (2001). Es decir, para que la parte demandada pueda establecer su defensa, es imperativo que la reclamación comprenda "un nivel mínimo de especificidad", de manera que identifique los actos imputados y su relación con el daño presuntamente causado. *Saint Mary Investments, LLC v. Denton Morales y otros, supra*; *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020).

En ese sentido, la Regla 10.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.4, confiere a la parte demandada, antes de presentar su alegación responsiva, el derecho a solicitar una exposición más definida de aquellas alegaciones vagas o ambiguas. Advierte el alto foro, sin embargo, que los tribunales no deben favorecer este tipo de petición "cuando el procedimiento de descubrimiento de prueba puede subsanar la alegada vaguedad", toda vez que la demanda "no tiene que alegar

hechos probatorios ni detallados". *Saint Mary Investments, LLC v. Denton Morales y otros, supra.*

## C.

Como se conoce, la desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo o en los méritos. S.*L.G. Sierra v. Rodríguez*, 163 DPR 738, 745 (2005). De este modo, la Regla 10.2 de Procedimento Civil, 32 LPRA Ap. V, R. 10.2, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Las razones para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, (5) dejar de exponer una reclamación que justifique la concesión de un remedio y (6) dejar de acumular una parte indispensable. *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *González Méndez v. Acción Soc.*, 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó en *Costas Elena y otros v. Magic Sport y otros, supra,* págs. 533-534, las normas que rigen la desestimación de una demanda basada en el inciso 5 de la Regla 10.2 de Procedimiento Civil, *supra.* Estas guías se resumen como sigue:

(1) La desestimación procede cuando, de las alegaciones de la demanda, surge que alguna de las defensas afirmativas derrotará la pretensión del demandante.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas.

(3) Los tribunales que atienden una moción basada en la Regla 10.2, *supra,* tienen que evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante.

(4) Toda duda debe resolverse a favor del demandante.

(5) El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación.

En otras palabras, a los fines de disponer de una moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra,* es norma asentada que el tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada y que hayan sido aseveradas de manera clara. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 533; *Torres Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Perfect Cleaning v. Cardiovascular,* 172 DPR 139, 149 (2007); *Colón v. Lotería,* 167 DPR 625, 649 (2006). Luego de ello, determinará si, a base de esos hechos que tomó como ciertos, la demanda establece una reclamación plausible que justifique la reclamación de un remedio. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 534. De modo que, si al así hacerlo se establece con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, procederá la desestimación solicitada. *Id.*; *Rivera Sanfeliz et al. v. Jta. Dir. First Bank,* 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Develevopment,* 187 DPR 649, 654 (2013). Claro, la desestimación de una demanda no procede si es susceptible de ser enmendada. *Saint Mary Investments, LLC v. Denton Morales y otros, supra*; *Colón v. Lotería, supra,* pág. 649. Ello así, ya que la medida extrema de la desestimación procede solamente en casos claros, pues conlleva la privación a un litigante de su día en corte. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 534; *Rosario v. Nationwide Mutual,* 158 DPR 775, 780 (2003).

### D.

La Ley Núm. 2 de 18 de enero de 2017, *Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico,* 3 LPRA sec. 9361 *et seq.*, dispone lo siguiente en su Artículo 11, *Inmunidad*:

> A menos que se demuestre que ha incurrido en negligencia crasa que conlleve una indiferencia temeraria hacia sus deberes, ninguna persona tendrá responsabilidad civil, criminal o de otro tipo hacia entidad o persona alguna y, sin necesidad de notificación u orden adicional, serán exonerados de acciones u omisiones en su capacidad y dentro de su autoridad en conexión con, en relación con, que

surjan bajo, o según permitido por esta Ley. Los miembros de la Junta, oficiales y empleados de la Autoridad [de Asesoría Financiera y Agencia Fiscal de Puerto Rico][34] serán defendidos e indemnizados por la Autoridad y exonerados de toda responsabilidad civil por acciones u omisiones de buena fe, en su capacidad y dentro de su autoridad. 3 LPRA sec. 9371.

Tal como surge de la letra, la inmunidad aquí concedida cobija a los funcionarios públicos de la Autoridad en su capacidad personal, por las acciones u omisiones, condicionado a que no hayan incurrido en negligencia crasa o indiferencia temeraria hacia sus deberes. En concordancia con el Artículo 16 del estatuto, el cual versa sobre las juntas, comités, comisiones y consejos, se establece que el Director Ejecutivo de la Autoridad, o su representante, "será miembro de toda Junta, Comité, Comisión o Consejo de los entes del Gobierno de Puerto Rico que sean considerados "covered territorial instrumentalities" bajo la Ley Federal PROMESA.[35] 3 LPRA sec. 9376.

Asimismo, la Sección 3.1 de la Escritura Pública 58 de Fideicomiso exonera de responsabilidad por los resultados de las inversiones realizadas, siempre que los actos u omisiones no infrinjan, por negligencia o intencionalidad, cualquier ley o reglamento relacionado.[36]

**III.**

En el caso ante nuestra consideración, en suma, los peticionarios aducen que el TPI incidió al no desestimar la *Primera Demanda Enmendada*. Indican que la parte recurrida adolece de personalidad jurídica y legitimación activa y que la acción está prescrita. Además, se imputa al TPI la aplicación errónea de la doctrina de la ley del caso y abusar de su discreción al resolver de forma conclusoria y automática, sin adjudicar en los méritos los planteamientos esbozados.

Examinados los recursos del título, la oposición y el derecho aplicable, estimamos que, en los planteamientos antes mencionados, el

---

[34] Véase, el inciso (a) del Artículo 3, *Definiciones*, de la Ley Núm. 2-2017.
[35] Ley Pública 114-187 de 30 de junio de 2016, 48 USCA sec. 2101 *et seq*. PROMESA corresponde al acrónimo de "Puerto Rico Oversight Management, and Economic Stability Act".
[36] Véase, el anejo incluido en la entrada 232 SUMAC-TPI.

TPI no actuó arbitrariamente ni abusó de su discreción al negarse a desestimar las causas instadas contra los peticionarios, al amparo de la Regla 10.2 (5) de Procedimiento Civil *supra*. En observancia al ordenamiento jurídico y vistos los argumentos legales plasmados en los escritos de oposición, el TPI acogió de la manera más favorable posible a la parte recurrida las alegaciones de hechos bien formuladas, concluyendo a favor de su suficiencia para subsistir las mociones de desestimación. Ello favorece la robusta política judicial a favor de que los casos se ventilen en sus méritos y que no se prive a una parte de su día en corte. *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 264 (2021).

Ahora, con relación a las defensas amparadas en la inmunidad condicionada que invocaron los peticionarios,[37] somos del criterio que el TPI incidió al justipreciar las alegaciones de la *Primera Demanda Enmendada* dirigidas a responsabilizarlos en su carácter personal.

A luz de la Regla 40 de nuestro Reglamento, consideramos oportuno intervenir en esta etapa de los procedimientos. Ciertamente, la aplicabilidad de la inmunidad condicionada constituye una cuestión que debe ser resuelta antes de la celebración del juicio en sus méritos. Nótese que, en la causa del título, aun tomando como ciertos y de la manera más favorable las alegaciones de la parte recurrida en la *Primera Demanda Enmendada,* en ausencia de hechos individuales y específicos, tendentes a demostrar que los peticionarios han incurrido en negligencia crasa, indiferencia temeraria hacia sus deberes, o intención de actos ilegales dentro del marco de su cargo y autoridad legal, estarían cobijados por la inmunidad provista estatutariamente, al palio de la Ley Núm. 2-2017. Es decir, la parte recurrida no puede descansar sus imputaciones de responsabilidad personal únicamente porque los peticionarios formaron o forman parte de la Junta de Gobierno de la UPR.

---

[37] TA2026CE00434, Segundo Error; TA2026CE00439, Tercer Error (en parte); TA2026CE00440, Segundo Error; TA2026CE00442, Tercer Error; TA2026CE00446, Segundo Error.

Ese análisis excede la liberalidad de las alegaciones de nuestro ordenamiento procesal civil y daría al traste con el propósito legislativo de conferir inmunidad a los funcionarios públicos que de buena fe ejercen sus oficios en los cuerpos directivos, según estatuidos en la Ley Núm. 2-2017. Por lo tanto, es forzoso colegir, que procede la desestimación de las causas de acción personales de los peticionarios, al amparo de la inmunidad estatutaria.

**IV.**

En atención a los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, acordamos expedir los recursos discrecionales de *certiorari* consolidados y revocar las *Resoluciones* impugnadas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones